IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 89 C 5942 |
| | ) | |
| THOMAS F. QUINN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

During the previously-scheduled July 15, 2013 hearing in this matter, this Court denied the motion by defendant Thomas Quinn ("Quinn")(Dkt. 857) to vacate the 2 1/2-year-old civil contempt order that this Court had entered because of Quinn's protracted recalcitrant refusal (1) to pay the multimillion dollar judgment that he owes in this case or (2) to establish his inability to do so (that latter possibility calls for particularly careful scrutiny, given Quinn's long history of fraudulent activity).

During the course of the July 15 proceeding, this Court's attention was directed to the fact that Quinn's current sentencing before a United States District Judge in Texas for a more recent fraud had included, as a component of that sentence, a provision that the custodial term imposed there was to run concurrently with any time served in connection with his civil contempt before this Court. But any such provision is universally regarded, by the federal courts that have dealt with

the issue, as drawing the fangs from the civil contempt order. It is painfully obvious that the coercive effect sought to be created by a civil contempt order that includes a custodial component is destroyed by such a concurrent-service provision.

During the course of the July 15 hearing this Court made its views on that score plain--it stated that the court imposing the sentence stemming from the Texas conviction could not preempt this Court's jurisdiction over this case on its own calendar. In that respect, here is the relevant portion of this Court's January 13, 2011 order (the "Contempt Order"), which granted the SEC's motion to hold Quinn in civil contempt (Dkt. 818):

> This Court has broad discretion to impose a sanction to coerce compliance by Mr. Quinn with this Court's Orders. This Court has inherent authority to protect its own Orders and enter a sanction for contempt, and has statutory authority as well. See 18 U.S.C.§401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority ...."). Mr. Quinn is currently incarcerated pending trial on a variety of criminal charges in the United States District Court for the Northern District of Texas, and pursuant to this Court's detainer Order. See 2/2/10 Order (Dckt. No. 773). To coerce compliance with this Court's Orders, Mr. Quinn shall remain incarcerated until he fully complies with the Consent Directive Order, the Repatriation Order, and the Order of Disgorgement. The incarceration for civil contempt shall continue until Mr. Quinn purges himself of the contempt by complying with this Court's Consent Directive Order, the Repatriation Order, and the Order of Disgorgement. It is the intent of this Court that, pursuant to 18 U.S.C. §3585(b), the time spent in custody from the date this Order is entered until Mr. Quinn purges himself of the contempt is time spent in official detention for the contempt and not for any other charge or offense. Mr. Quinn shall

2

not receive credit, in any sentence in any criminal
proceeding, for any time served in custody for contempt
of court. The incarceration for civil contempt shall
begin upon entry of this Order.

That Contempt Order of course preceded by something more than two years the imposition of Quinn's sentence in the Texas criminal case. And the position just quoted from the Contempt Order is supported by unanimous holdings elsewhere, but this opinion will first cite the caselaw from this Circuit and the Fifth Circuit, plus the Bureau of Prisons' policy to the identical effect.

First, in terms of Seventh Circuit jurisprudence by which this Court is bound, our Court of Appeals confirmed the principle enunciated in the Contempt Order nearly four decades ago in Anglin v. Johnston, 504 F.2d 1165, 1169 (7th Cir. 1974). In part Anglin, which actually suspended a pending federal sentence while a prisoner served an intervening civil contempt sentence, stated (id. at 1169, footnotes omitted):

> In view of the totality of authority, we conclude that despite the silence of 28 U.S.C. §1826(a) upon the subject, a prisoner serving a current federal sentence is not entitled to credit for time spent in custody for a civil contempt, unless, of course, the sentencing judge in the case of the contempt expressly makes the contempt confinement concurrent with the prior criminal sentence.
>
> We agree with Judge McGarr's observation that to permit petitioner to credit the contempt time against the criminal sentence would "remove the incentive...to compel the testimony sought" and render the statute nugatory when applied to a prisoner presently incarcerated.

3

Two years later the Court of Appeals for the Fifth Circuit expressly followed Anglin's lead in United States v. Thurmond, 534 F.2d 41, 42 (5th Cir. 1976). Here, omitting numerous citations led by Anglin, is the Fifth Circuit's endorsement not only of the Anglin holding but of the rationale stated both by this Court and by Anglin:

> Thurmond is not entitled to be allowed credit, against the federal sentence he had been serving, for the time spent in civil contempt confinement. Other circuits have sustained a district court's authority to suspend the execution of a prisoner's sentence pending his confinement for civil contempt. This circuit has recently approved the rationale underlying those cases in In Re: Grand Jury Proceedings, U. S. v. Marshall, 532 F.2d 410 (1976). As one of two reasons specified for our holding that a civil contempt sentence may suspend the running of a previous Federal Youth Corrections Act sentence, we said:
>
>> (T)o allow credit would wholly frustrate the clearly articulated congressional goal of coercing a witness to testify. To credit time in prison for contempt toward a preexisting sentence would altogether vitiate the intended coercive incentive to testify.

Although each of those cases is admittedly long in the tooth, the principle that they embody is clearly alive and well and enforced universally. Here is In re Grand Jury, 640 F.3d 385, 386 (1st Cir. 2011):

> By chance, when Congress in 1984 amended section 1826 (an amendment not bearing on the present case), the Senate committee report took note of and effectively endorsed the practice of federal courts interrupting federal sentences during incarceration for civil contempt. S.Rep. No. 98-225, at 330 (1983), 1984 U.S.C.C.A.N. 3182, 3505. And this practice has been upheld by every circuit to consider the question.FN1

4

And that n.1 cites a host of cases, including the Seventh Circuit and Fifth Circuit decisions discussed above.

Unsurprisingly, the Bureau of Prisons' policies and procedures conform to the same principle.  For that purpose, see the Bureau's July 1, 2004 Program Statement on "Civil Contempt of Court Commitments," cited as No. 5140.38,  CPD/ISM.

This Court has no desire, of course, to create a tug of war between two conflicting District Court rulings.  But the fact remains that its order antedated Quinn's Texas sentencing (and cases cited above go even farther, supporting the interruption of an existing criminal sentence by suspending its further operation even when a custodial sentence for civil contempt is ordered at a <u>later</u> date).  Hence a copy of this opinion is being transmitted to the sentencing judge in Texas in the hope that he will take a fresh look at the matter.

_____
Milton I. Shadur
Senior United States District Judge

Date:  July 19, 2013